**Virgil LECHNER, Jo Ann Lechner, Defendants–Appellants,**

v.

**Curtis REUTEPOHLER, Sharon Reutepohler, Plaintiffs–Appellees.**

**No. 19A01–8904–CV–00121.**

Court of Appeals of Indiana, First District.

Nov. 15, 1989.

Roger S. Curry, Jasper, for defendants-appellants.

Gerald R. Thom, Thom & DeMotte, Jasper, for plaintiffs-appellees.

RATLIFF, Chief Judge.

### STATEMENT OF THE CASE

Virgil and Jo Ann Lechner appeal the judgment of the small claims court finding them liable to homeowners, Curtis and Sharon Reutepohler, for $3,000.00 plus court costs for work and material expended on structural repairs made to the Reutepohlers' home in order to stem a water leakage problem. We reverse.

### FACTS

The Reutepohlers purchased a new home from the Lechners through Century 21 Realty in November of 1981. The home was about ninety-five percent (95%) completed at the time of the purchase. Final grading of the lot had been completed, but no landscaping had been undertaken.

Virgil Lechner provided the blue print from which the house was constructed. Lechner hired subcontractors to do most of the actual construction on the house, and claimed at trial that he was not otherwise involved in constructing the house. However, the Reutepohlers claimed that he did do some work on the house. Lechner admits to inspecting the house.

As the house was being constructed, Lechner listed the house for sale with Century 21 Realty. All negotiations and transactions with respect to the purchase of the house took place between the Reutepohlers and Linda Schroering, the real estate agent. The Lechners previously sold twelve (12) other homes following a similar method. The Reutepohlers signed a purchase agreement which contained a clause releasing the seller from all liability relating to any defect in the house.

When the Reutepohlers moved into the house in 1981 they noticed small cracks in a basement wall and that small puddles ap-

peared on the floor of the basement after every rainfall. The Reutepohlers also noticed that the ground slope away from the house was inadequate and that after a rainfall water would stand in front of the house and puddles would form.

In 1982, the Reutepohlers poured a concrete driveway and began landscaping the property. At this time the Reutepohlers added dirt in an attempt to increase the ground slope away from the house. However, water continued to run up against the house despite this attempt at repair.

In April of 1985, after the basement flooded once again, the Reutepohlers called Gene Giehl of G & S Homes who indicated that the cracks in the basement wall needed to be repaired. The Reutepohlers then contacted Lechner to tell him that they were having their basement repaired and to find out where the cement blocks in the basement changed from ten inch to six inch blocks. Lechner testified that the Reutepohlers never complained to him about water problems in the basement nor did the Reutepohlers reveal to him the extent of structural repair being undertaken to rectify the problem. Lechner stated at trial that the Reutepohlers indicated to him at this time that they did not want Lechner to do the repair work. The Reutepohlers noted that in the past when they had experienced problems with the house, including a malfunctioning air-conditioner and septic system, they had contacted Lechner. Lechner would then refer the Reutepohlers to the subcontractors who installed the faulty equipment, and the Reutepohlers would contact that party for repairs.

G & S Homes attempted to fix the water problem in April of 1985. However, additional work was needed in September of 1985 and again in January of 1986. In April of 1986, more repair efforts were made which were completed in July of 1986.

In early 1987 the Reutepohlers contacted Lechner and indicated that they wanted Lechner to pay for the repairs made on the basement. Lechner refused to pay.

On March 23, 1988, the Reutepohlers filed suit in small claims court against the Lechners for breach of the implied warranty of habitability. On October 18, 1988, the trial court entered judgment against the Lechners in the amount of $3,000 plus court costs. From this decision the Lechners now appeal.

## ISSUES

Because we reverse the judgment of the trial court only the following two issues will be discussed in this opinion:

1. Was the Reutepohlers' cause of action barred by the statute of limitations?

2. Was the Reutepohlers' cause of action barred by the release provision of the purchase agreement?

## DISCUSSION AND DECISION

*Issue One*

The Lechners first claim that the trial court erred in entering judgment for the Reutepohlers because this action was barred by the statute of limitations. The Lechners first raised this claim of error in their motion to correct errors.

Because the Reutepohler's cause of action was filed in a small claims court, the Lechners were not required to plead the statute of limitations as an affirmative defense. Indiana Rules of Procedure, Small Claims Rule 4(A). ("All defenses shall be deemed at issue without responsive pleadings …"). *Frank H. Monroe Heating and Cooling Inc. v. Rider* (1983), Ind. App., 450 N.E.2d 1056 (Trial Rules govern small claims proceedings only to the extent that they are not inconsistent with the Small Claims Rules). Nonetheless, the Lechners were still required to litigate this issue at trial. S.R. 4(A) ([T]his provision shall not alter the burden of proof). The party claiming the statute of limitations defense bears the burden of proving that the cause of action was instituted beyond the time allowed. *Ballard's Estate v. Ballard* (1982), Ind.App., 434 N.E.2d 136, 142; *H.W.K. v. M.A.G.* (1981), Ind.App., 426 N.E.2d 129, 133. It was conceded at oral argument that the statute of limitations was never mentioned at trial. Further-

more, evidence elicited from the Reutepohlers on direct and cross-examination conflicted with statements made by the Lechners' attorney during closing argument concerning when the Reutepohlers' cause of action actually occurred. The Reutepohlers testified that they first noticed standing water in the basement and cracks in the basement wall soon after moving into the house in 1981. During closing arguments, the Lechners' attorney stated that "[t]here was no real problem in '82. There was no real problem in '83. The problem started after that, I guess the evidence would be in '84, and then it got bad in '85." Record at 317. The Reutepohlers filed suit in 1987. The Lechners now correctly claim that a six year statute of limitations is applicable to the Reutepohlers' claim.[1] If the Lechner's had actually litigated the statute of limitations claim at trial, the Lechners' attorney would not have claimed during closing argument that "the problem" started in 1984 or 1985, therefore implying that the Reutepohlers' 1987 suit was brought well within the six year statute of limitations. Because the Lechners failed to preserve at trial the issue of the Reutepohlers' alleged violation of the statute of limitations, the issue is waived on appeal.[2]

*Issue Two*

The Lechners next claim that the trial court erred in entering judgment for the Reutepohlers because the purchase agreement signed by the Reutepohlers contained a provision releasing the Lechners from liability. We agree.

■ A release is a surrender of a claimant's right to prosecute a cause of action. *Gearhart v. Baker* (1979), Ind. App., 393 N.E.2d 258, 260. Release agreements, like contracts generally, are interpreted as a matter of law, absent some ambiguity. *Babson Brothers Co. v. Tipstar Corp.* (1983), Ind.App., 446 N.E.2d 11, 16. Interpretation of a release, like any other contract, is determined by the language of the particular instrument, considered in light of all the facts and circumstances. *Id.*

■ The release provision of the purchase agreement provides in pertinent part:

---

1. The Lechners claim that Indiana Code section 34–1–2–1 provides the applicable statute of limitations for the present case. This statute provides a six-year statute of limitations and reads in pertinent part:
   "The following actions shall be commenced within six years after the cause of action was accrued and not afterwards:
   "Third, for injuries to property other than personal property, damages for any detention thereof, and for recovering possession of personal property."
   The Reutepohlers claim, however, that Indiana Code section 34–4–20–2 governs their claim. That statute reads as follows:
   "No action to recover damages whether based upon contract, tort, nuisance, or otherwise, for:
   (a) Any deficiency, or alleged deficiency, in the design, planning, supervision, construction, or observation of construction of an improvement to real property;
   (b) An injury to property, either real or personal, arising out of any deficiency; or
   (c) Injury to the person, or for wrongful death, arising out of any such deficiency;
   shall be brought against any person who designs, plans, supervises, or observes the construction of, or constructs an improvement to real property, unless the action is commenced within the earlier of ten (10) years from the date of substantial completion of the improvement or twelve (12) years after the completion and submission of plans and specifications to the owner if the action is for deficiency in design." The Reutepohlers are mistaken. I.C. 34–4–20–2 is a statute of repose, not a statute of limitations. *See Berns Construction Co. v. Miller* (1986), Ind.App., 491 N.E.2d 565, 567–573, *trans. denied; Wagner Construction Co. v. Noonan* (1980), Ind.App., 403 N.E.2d 1144, 1148; n. 3. Therefore, reading I.C. 34–1–2–1 and I.C. 34–4–20–2 together, a party may file a suit such as that presently before this court up to six years after the harm occurs so long as suit is filed within ten years of the date of completion of the house. In the instant case, if the accrual date is deemed to be when the Reutepohlers first noticed the basement cracks and water leakage in 1981, this claim would be barred by the six-year statute of limitations articulated in I.C. 34–1–2–1 even though the ten-year statute of repose articulated in I.C. 34–4–20–2 has yet to expire. However, by failing to litigate the issue at trial, the Lechners have waived any such error.

2. In the present case the parties were represented by counsel yet failed to litigate the statute of limitations defense. We do not decide, by our holding herein, whether or not it is incumbent upon a small claims judge presiding over a suit where the parties are without counsel to develop and determine the statute of limitations issue on behalf of those litigants.

"Inspection of the real estate and improvements thereon is hereby waived by Purchaser who is relying entirely for its condition upon Purchaser's own examination and Purchaser hereby releases the Seller, Broker and their sales agents from any and all liability relating to any defect or deficiency affecting the real estate and improvements which release shall survive the closing of the transaction."

Record at 127. The Reutepohlers claim that this provision should not be enforced for two reasons. First, they claim that the release fails for lack of consideration. A release must be supported by sufficient consideration. 25 I.L.E. *Release* § 3 (1960). The analysis which leads the Reutepohlers to claim inadequate consideration in the present case is ill conceived. The Reutepohlers look to the release provision standing alone and claim that no consideration was tendered for the release. However, the release provision is part of the purchase agreement. The Reutepohlers agreed to buy and the Lechners agreed to sell a house for $65,000 under the conditions set forth in the purchase agreement. Consideration for a promise can be another promise. 6 I.L.E. *Contracts* § 31 (1958). Therefore, the purchase agreement was supported by adequate consideration. Because consideration for the purchase agreement as a whole was adequate, we deem consideration for the individual provisions, including the release, to be adequate.

The Reutepohlers also claim that the release should be considered void. According to the Reutepohlers, the provision contested herein constitutes a prior release and therefore, should be barred as a matter of public policy. However, this court previously has held that no public policy prevents parties from agreeing in advance that one is under no obligation of care for the benefit of the other, and shall not be liable for the consequences of conduct that would otherwise be negligent. *LaFrenz v. Lake County Fair Board* (1977), 172 Ind. App. 389, 392, 360 N.E.2d 605, 607; *see*

*also Gumberts v. Greenberg* (1953), 124 Ind.App. 138, 145, 115 N.E.2d 504, 507, (Generally, where there is no fraud or overreaching involved and the parties' intent to settle for unknown injuries is clearly expressed, a release is a bar to recovery for injuries subsequently discovered.) Therefore, the parties to the present case were free to include in the purchase agreement a provision releasing the Lechners from liability arising out of even latent defects.[3] The trial court erred in failing to recognize the validity of the release agreement and in failing to enter judgment in favor of the Lechners on this basis.

Reversed.

ROBERTSON and BAKER, JJ., concur.

---

3. Although not in effect when the Reutepohlers purchased their home in 1981, Indiana Code section 34–4–20.5–9 now provides strict guidelines and limitations governing the content of release provisions and disclaimers of implied warranties relating to the sale of a new house.