CALUMET NATIONAL BANK as Trustee Under Trust No. P–3362 Dated September 1, 1986, Appellant–Plaintiff,

v.

AMERICAN TELEPHONE & TELE-GRAPH CO., a New York Corp., and American Telephone & Telegraph Communications, Inc., Appellees–Defendants.

No. 64A03–9411–CV–409.

Court of Appeals of Indiana.

Aug. 15, 1995.

Rehearing Denied Jan. 4, 1996.

Patrick J. Galvin, Carl N. Carpenter, Galvin, Galvin & Leeney, Hammond, Glenn J. Tabor, Blachly, Tabor, Bozik & Hartman, Valparaiso, for appellant.

Paul A. Rake, Sherry L. Clarke, Eichhorn, Eichhorn & Link, Hammond, for appellees.

## OPINION

STATON, Judge.

Calumet National Bank as Trustee under Trust No. P–3362, ("the Trust") appeals the trial court's grant of summary judgment in favor of American Telephone and Telegraph Co. and AT & T Communications, Inc. (respectively "AT & T" and "AT & T Communications", collectively "Utilities"). The Trust presents three issues for our review, only two of which we must address. Restated, they are:

I. Whether the trial court erred in determining that AT & T Communications' license with Conrail was enforceable against the Trust, thus precluding a trespass action.

II. Whether the trial court erred in determining that AT & T was a benefi-

ciary of the license agreement between Conrail and AT & T Communications.

We affirm.

The facts most favorable to the Trust reveal that in 1982, the Federal Communications Commission authorized Consolidated Rail Corporation ("Conrail") to abandon Conrail's railroad right-of-way adjoining the Trust's property. On January 1, 1984, Conrail and AT & T Communications entered into a license agreement, which agreement gave AT & T Communications the authority to install a fiber optic cable over Conrail's right-of-way between Harrisburg, Pennsylvania and Chicago, Illinois. This license was amended on September 1, 1988 to specifically include the land at issue.

On February 28, 1989, the Trust filed a complaint against Conrail, seeking to quiet title in the land that was formerly Conrail's right-of-way.[1] On May 19, 1989, the trial court entered a default judgment against Conrail, vesting fee simple ownership in the Trust pursuant to IND.CODE 8–4–35–1 et seq.[2] Thereafter, the Trust brought a trespass action against the Utilities based on the placement of the fiber optic cable on the land at issue.[3]

This case came before the trial court on cross motions for summary judgment. In its October 3, 1994 order, the trial court denied the Trust's summary judgment motion and granted summary judgment in favor of the Utilities, concluding that the Trust "took its interest in the right of way 'subject to' the 'legal occupancy granted by the railroad' to the AT & T companies. . . .". Record, p. 485. The Trust appeals, asking this court to reverse the judgment of the trial court and enter summary judgment in its favor.

When reviewing the grant or denial of summary judgment, we use the same standard used by the trial court. *Ramon v. Glenroy Construction Co., Inc.* (1993), Ind. App., 609 N.E.2d 1123, 1127, *trans. denied.* Summary judgment is appropriate only when the evidentiary matter designated by the parties shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Id.*; Ind.Trial Rule 56(C). In the context of cross-motions for summary judgment, the trial court must deal with each motion separately, construing the facts and inferences to be drawn therefrom in a light most favorable to the non-moving party. *Ace Rent–A–Car, Inc. v. Indianapolis Airport Authority* (1993), Ind.App., 612 N.E.2d 1104, 1106, *trans. denied.* If the facts are undisputed, our task is to determine the law applicable to the undisputed facts, and whether the trial court correctly applied it. *United Farm Bureau Mutual Insurance Co. v. Steele* (1993), Ind.App., 622 N.E.2d 557, 560, *reh. denied.*

## I.

### Validity of License Agreement

The Trust claims that the Utilities did not have a legal right to enter the land at issue, despite AT & T Communications' license agreement with Conrail. This argument hinges on the construction of various provisions of IND.CODE § 8–4–35–1 et seq.[4] Statutes should be construed so as to ascertain and give effect to the intention of the legislature as expressed in the statute. In so doing, the objects and purposes of the statute in question must be considered as well as the effect and consequences of such interpretation. *State v. Windy City Fireworks, Inc.*

1. The Utilities were not named in the quiet title action.

2. The Utilities subsequently instituted condemnation proceedings against the Landowners. The Landowners' trespass action and the Utilities' condemnation action were consolidated at the trial court level for purposes of addressing common questions of law, but are not consolidated on appeal. This court recently affirmed the order of the trial court overruling Landowners' objections to the Utilities' condemnation of the land at issue. *See Calumet National Bank v.*

*American Telephone and Telegraph Co.* (1995), Ind.App., 647 N.E.2d 689, *reh. denied.*

3. The Utilities completed installation of the cable on the subject land in the summer and fall of 1989.

4. This statute was repealed on May 10, 1995 by Ind.House Enrolled Act No. 1071, Section 5. However, IC 8–4–35–1 et seq. remains effective for purposes of this appeal.

(1992), Ind.App., 600 N.E.2d 555, 558, *adopted on transfer* (1993), Ind., 608 N.E.2d 699.

██ When interpreting the words of a single section of a statute, this court must construe them with due regard for all other sections of the act and with regard for the legislative intent to carry out the spirit and purpose of the act. *Detterline v. Bonaventura* (1984), Ind.App., 465 N.E.2d 215, 218, *trans. denied.* We presume that the legislature intended its language to be applied in a logical manner consistent with the statute's underlying policy and goals. *Id.* We presume words appearing in the statute were intended to have meaning, and we endeavor to give those words their plain and ordinary meaning absent a clearly manifested purpose to do otherwise. *Indiana Dept. of Human Services v. Firth* (1992), Ind.App., 590 N.E.2d 154, 157, *trans. denied.*

██ The Trust argues that under IC 8–4–35–5, ownership of the subject land had vested in the Trust upon Conrail's abandonment thereof, which occurred no later than December of 1985.[5] Because abandonment took place before Conrail amended its license agreement with AT & T Communications to include the land at issue, Conrail had no legal interest in the land, and in turn had no authority to grant a license to AT & T Communications. Without a valid license, the Utilities' installation of the fiber optic cable constituted a trespass, entitling the Trust to damages.

The enforceability of AT & T Communications' license agreement is governed by IND. CODE § 8–1–35–8 (1993), which provides in relevant part:

The fee simple owner takes title under this chapter to the right-of-way subject to any valid communication, fiber optic, or cable

television easement, license or legal occupancy granted by the railroad *before the date of the recording of an affidavit under section 7 of this chapter or the recording of a quitclaim deed under section 6 of this chapter.*

IC 8–1–35–8(a) (emphasis added). In the case at bar, the undisputed facts reveal that the Trust did not file an affidavit pursuant to IC 8–4–35–7. Instead, the Trust filed a quitclaim deed to Conrail's former right-of-way after the May 19, 1994 default judgment was entered against Conrail in the Trust's quiet title action. However, this date is subsequent to September 1, 1988, at which time the license agreement between Conrail and AT & T Communications was amended to include the land at issue. Accordingly, the plain language of IC 8–4–35–8(a) dictates that the Trust took its interest in Conrail's former right-of-way subject to AT & T Communications' license.

The Trust argues that despite the plain language of IC 8–4–35–8(a), consideration of IC 8–4–35–5 renders AT & T Communications' license invalid. We disagree. IC 8–4–35–5 governs vesting of the railroad's property interest, and provides in relevant part that "[i]f a railroad abandons its right to a railroad right-of-way, the railroad's interest vests ... in the owner of the adjoining fee...." The Trust argues that under this provision, the property interest vested no later than December of 1985, when Conrail abandoned the right-of-way. As a result, the status of AT & T's interest is controlled by the September 1, 1987 date. Since AT & T did not acquire a license to use the land at issue until September 1, 1988, the license is subordinate to the Trust's ownership of the land.

5. Abandonment by a railroad is defined by statute as follows:

... [A] railroad abandons its right-of-way when:

(1) the Interstate Commerce Commission issues a certificate of public convenience and necessity relieving the railroad of its common carrier obligation on the right-of-way; and

(2) rails, switches, ties, and other facilities have been removed from the right-of-way.

IND.CODE § 8–4–35–4(a) (1993). In the case at bar, the Federal Communications Commission issued a certificate authorizing Conrail to abandon the right-of-way at issue on March 11, 1982. Record, p. 452. The Trust designated evidence indicating that the rails and ties were removed from the right-of-way no later than December of 1985. Record, p. 447–448. This evidence, taken as true for purposes of summary judgment, demonstrates that statutory abandonment occurred in December of 1985.

This argument fails to take into account IC 8–4–35–6, which governs the establishment of record title in such property upon abandonment:

(a) To establish record title upon an abandonment of a railroad right-of-way, an owner of fee simple real property in whom the railroad's interest vests under section 5 of this chapter may file an affidavit with the railroad, or with one holding the railroad's interest, stating:

(1) that the filer is the owner of fee simple real property in whom a railroad's interest has vested; and

(2) a legal description of the filer's property and a legal description of the portion of the right-of-way that has vested in the filer.

(b) The railroad shall, within one hundred eighty (180) days after receipt of the affidavit, execute and deliver to the fee simple owner who files under this section a quitclaim deed for the portion of the right-of-way described in the affidavit.

(c) The fee simple owner shall record the title and have it entered for taxation in the county where the right-of-way is located.

■ Construing the language of these sections together as our standard of review requires, it is apparent that the Trust, in whom Conrail's interest vested under IC 8–4–35–5, did not obtain record title to, and thus an enforceable interest in, such land until it obtained and filed a quitclaim deed pursuant to IC 8–4–35–6.[6] Conrail's legal

6. If the railroad fails to issue a quitclaim deed after an adjoining landowner files an affidavit with the railroad under IC 8–4–35–6(a), the landowner may establish record title by filing an affidavit in the county in which the claimed property is located. *See* IC 8–4–35–7.

7. In *Penn Central, supra,* the Seventh Circuit Court of Appeals declared IC 8–4–35–1 *et seq.* unconstitutional as a violation of the railroad's due process rights in the following context. The operation of IC 8–4–35–6 and 8–4–35–7 allows an adjoining landowner to automatically establish record title in railroad land if, after 180 days, the railroad does not confer a quitclaim deed on the landowner. This automatic provision does not guarantee that a railroad challenging the adjoining landowner's ownership rights would obtain a hearing prior to being deprived of its property. The court concluded that due process

interest in the land was not extinguished until the Trust obtained record title through IC 8–4–35–6 or IC 8–4–35–7. *See Penn Central Corporation v. U.S. Railroad Vest Corporation* (1992), 7th Cir., 955 F.2d 1158, 1162.[7] Thus, under IC 8–4–35–8(a), the Trust took title to the right-of-way subject to AT & T Communications' license.

This interpretation is consistent with the underlying policy and goals of IC 8–4–35. It is clear from the incorporation of IC 8–4–35–6 and IC 8–4–35–7's filing requirements within IC 8–4–35–8 that our General Assembly did not intend to subject public utilities to trespass liability simply by operation of IC 8–4–35–4 and IC 8–4–35–5, without adjoining landowners first establishing record title.

Because AT & T Communications' entered the land by authority of a license agreement predating the Trust's acquisition of record title in the right-of-way, no trespass occurred. Summary judgment in favor of AT & T Communications was appropriate.

II.

*Beneficiaries of License*

■ Regarding the parties affected by the license agreement, the trial court made the following finding:

AT & T Communications, Inc. entered into a license agreement with Conrail dated January 1, 1984 and supplemented January 31, 1987 and September 1, 1988. AT & T and [AT & T Communications of

entitles a railroad to notice and opportunity to be heard before its rights in the property are extinguished. *Id.* at 1163.

Neither party to this action challenges IC 8–4–35–1 *et seq.* on constitutional grounds. Because *Penn Central* is not factually analogous and the statute's constitutionality is not before this court, we decline to adopt *Penn Central 's* holding. *See generally Matter of Tina T.* (1991), Ind., 579 N.E.2d 48, 56–57 (the burden to rebut the constitutionality of a statute is on the challenger, and all reasonable doubts must be construed in favor of the statute's constitutionality). However, we believe the Seventh Circuit's due process rationale is persuasive with regard to our construction of the statute's various filing requirements; that is, that record title must be established through IC 8–4–35–6 or IC 8–4–35–7 before the railroad's interest in a former right-of-way is extinguished.

Indiana [8]] were beneficiaries of the agreement.

Record, p. 483. The Trust challenges this finding as unsupported by the language of the license agreement. However, the Trust failed to cite relevant or controlling authority to support this argument; it is therefore waived. Ind.Appellate Rule 8.3(A)(7); *Garrod v. Garrod* (1992), Ind.App., 590 N.E.2d 163, 172, *reh. denied.*

■ Notwithstanding waiver, we reject this argument. This court has repeatedly recognized the validity of third-party beneficiary contracts. *OEC–Diasonics, Inc. v. Major* (1993), Ind.App., 622 N.E.2d 1025, 1031–1032, *reh. denied.* A third-party beneficiary contract generally requires: 1) a clear intent to benefit a third party; 2) the imposition of a duty on one of the contracting parties in favor of the third party; and 3) the rendering of a direct benefit to the third party. *Id.* at 1032. Among these three factors, the parties' intent to benefit the third party is controlling. *Id.* Such an intention may be demonstrated by specifically naming the third party, or by other evidence. *Id.;* *National Board of Examiners v. American Osteopathic Association* (1994), Ind.App., 645 N.E.2d 608, 618.

The unambiguous language of the license agreement indicates the clear intent of the parties to facilitate telecommunications technology through the installation of a fiber optic cable. Record, p. 318. It is undisputed that AT & T Communications, a wholly-owned subsidiary of AT & T, "operates and manages the business of the interLATA long distance telecommunications services of AT & T." Record, p. 184. Procuring the right to install a fiber optic cable on AT & T's behalf is a logical component of the operation and management of AT & T's telecommunications services. AT & T directly benefits from the license in that AT & T can more efficiently provide telecommunication services by using the fiber optic cable.

We conclude that the unambiguous language of the license agreement sufficiently indicates the contracting parties' intent to benefit AT & T, thereby rendering AT & T a

third-party beneficiary. *OEC–Diasonics, supra.* Accordingly, we find no error in the judgment of the trial court.

Affirmed.

GARRARD and BAKER, JJ., concur.

8. AT & T Communications of Indiana, Inc. is not a party to this appeal.