CONSOLIDATED RAIL CORPORATION, INC., and West Central Indiana Rails To Trails, Inc., Appellants (Defendants below),

v.

Pam LEWELLEN, Jerry Howard, Linda K. Howard, Dale Remley, Doris M. Remley, Cynthia Denman, David Denman, Nola Parker, Charles Stephen Roudebush and all others similarly situated, Appellees (Plaintiffs below).

No. 54S01–9706–CV–368.

Supreme Court of Indiana.

June 19, 1997.

See also 1997 WL 335021.

Henry J. Price, James A. Mellowitz, Price & Barker, Indianapolis, Nels J. Ackerson, The Ackerson Group, Chartered, Washington, D.C., Kurt R. Homann, Collier Homann & Siamas, Crawfordsville, for Appellants.

Karl L. Mulvaney, Andrea M. Roberts, Frank A. Bracken, Bingham Summers Welsh & Spilman, Indianapolis, for Amici Curiae, City of Indianapolis, Rails to Trails Conservancy, National Recreation and Park Ass'n, Am. Trails, Indiana Chapter–Am. Soc'y of Landscape Architects, Rail Corridor Dev., Inc., Hendricks County Trail Dev. Ass'n, Transportation corridor Dev. Alliance, Indiana Bicycle Coalition, Indiana Parks and

Recreation Ass'n, Am. Hiking Soc'y, Friends of Pumpkinvine Nature Trail, and Iowa Trails Council .

Andrea Ferster, General Counsel, Rails to Trails Conservancy, Washington D.C., for Amicus Curiae, Rails to Trails Conservancy.

Richard G. Tulley, Berry, Cooper & Tulley, Crawfordsville, for Amici Curiae, City of Crawfordsville and Crawfordsville Park Bd.

Richard S. McGaughey, Goebel, McGaughey & Sosbe, Crawfordsville, for Amicus Curiae, Montgomery County Convention and Tourism Bd.

Nicholas C. Nizamoff, Lonnie D. Johnson, White & Raub, Indianapolis, for Appellee.

## ON PETITION TO TRANSFER

SULLIVAN, Justice.

This case is one of a number of Indiana lawsuits raising issues related to the ownership and use of parcels of land formerly constituting railroad rights-of-way. Here we agree with the trial court and Court of Appeals that the parcels in question are now owned by the owners of the land adjacent to the former right-of-way.

### Background

We will briefly explain the background of this case; for a fuller discussion of the facts, see the Court of Appeals opinion in *Consolidated Rail Corporation, Inc. v. Lewellen*, 666 N.E.2d 958 (Ind.Ct.App.1996).

Landowners Pam Lewellen, Jerry Howard, Dale Remley and Cynthia and David Denman brought a class action lawsuit against Consolidated Rail Corporation, Inc. ("Conrail"), to quiet title in segments of land of an abandoned railway corridor and to recover for slander of title, criminal conversion, and criminal trespass. Each landowner owns property adjacent to a former railroad corridor extending a distance of approximately twenty-nine miles from the western banks of the Wabash River to the west side of Crawfordsville. Handwritten deeds more than 100 years old evidence the conveyance of the property to the original railroad. Many of the deeds state:

> [Grantor], for consideration, "... hereby Conveys and Warrants to the [Railroad] the Land, Right of way and Right of Drainage for its Railway ..."[1]

As activity over the rail line decreased, Conrail elected to discontinue rail service over this corridor. The Interstate Commerce Commission ("ICC") issued Conrail a certificate of abandonment on February 24, 1982, authorizing Conrail to discontinue common carrier rail service on the line. By 1985, Conrail had removed the tracks and other materials but left in place structures such as bridges, culverts and drainage tiles. Between 1982 and 1994, Conrail continued to pay the real estate taxes on the land.

West Central Indiana Rails to Trails, Inc. ("West Central"), a public interest group concerned with preserving railway corridors, purchased Conrail's interest in the corridor as evidenced by a quitclaim deed recorded July 6, 1994. Landowners filed the present class action lawsuit against Conrail and West Central claiming that Conrail acquired mere easements which upon abandonment of the rail line were extinguished. The trial court granted Landowners' preliminary injunction enjoining West Central from altering the corridor, opening the corridor to the public, or advertising the corridor as a recreational trail. After motions for summary judgment by all parties, the trial court granted partial summary judgment in favor of Landowners and in effect quieted title in Landowners by determining that the deeds conveyed right-of-way easements which were extinguished upon abandonment. One question was properly certified for interlocutory appeal before the Court of Appeals:

> Whether the trial court erred in construing certain 19th century deeds in favor of the landowners, determining that they conveyed mere easements to the Railroad which were extinguished upon abandonment, rather than fee simple interests.

The Court of Appeals affirmed and Conrail and West Central petitioned this Court to transfer.

---

1. For variations of language appearing in other deeds, see *Consolidated Rail*, 666 N.E.2d at 960.

*Discussion*

Issues related to the ownership and use of parcels of land formerly constituting railroad rights-of-way have become the subject of regular consideration by Indiana courts. In addition to those addressed in this opinion, we confront others today in *Calumet Nat'l Bank as Trustee v. Am. Tel. & Tel., a N.Y. Corp.*, 682 N.E.2d 785 (Ind.1997).[2] In order to resolve the question presented here—whether the trial court properly granted partial summary judgment for the Landowners—we must consider whether Conrail's predecessors-in-interest held fee simple title to or only easements over the parcels in question and, if only easements, whether those easements were abandoned. If the railroads held fee simple title to the parcels, there can be no question that West Central owns the right-of-way and summary judgment in favor of the Landowners was erroneous. But the summary judgment was proper if (i) the railroads' interests consisted of easements and (ii) those easements were abandoned.

I

■ Appellants Conrail and West Central argue that the Court of Appeals erred in concluding that the deeds in question conveyed an easement rather than fee simple interest. In support of this argument, appellants point to the statute in place at the time the deeds were executed (still in place today) which provides that any conveyance worded as "A.B. conveys and warrants to C.D." [here describe the premises] "for the sum of" [here insert consideration] "shall be deemed and held to be a conveyance in fee simple to the grantee...."[3] With regard to this argument, we adopt the Court of Appeal's reasoning that the use of the term "right of way" in the deeds in issue in this case conveyed to the railroad only an easement. We emphasize that the language of the deeds in question in this case does not trace the cited property statutes. Rather, the majority of the deeds states that the grantor "conveys and warrants" to the railroad "Land, Right of way, and Right of drainage for its Railway."

In our opinion in *Hefty*, we discussed at some length the methodology this Court enunciated in *Brown v. Penn Central Corp.*, 510 N.E.2d 641 (Ind.1987) to construe the meaning of deeds conveying a strip of land to a railroad. *Hefty*, 680 N.E.2d at 853–55. In *Hefty* and *Brown*, we reaffirmed that the object of deed construction is to ascertain the intent of the parties and where there is no ambiguity in the deed, the intention of the parties must be determined from the language of the deed alone. *Hefty*, 680 N.E.2d at 853–54; *Brown*, 510 N.E.2d at 643 (citations omitted). We stressed that a railroad is responsible for the printed words when the railroad prepares a conveyance form; thus, we will construe the form in a light most favorable to the grantors. *Hefty*, 680 N.E.2d at 853–54; *Brown*, 510 N.E.2d at 643 (both citing *Richard S. Brunt Trust v. Plantz*, 458 N.E.2d 251, 252 (Ind.Ct.App.1983)). Helpful to our analysis here, we set forth the settled rule on conveyances of strips of land to railroads:

> A deed that conveys a *right* generally conveys only an easement. *Brunt Trust,*

2. Other cases in the last decade dealing with such issues include *Hefty v. All Other Members of the Certified Settlement Class*, 680 N.E.2d 843 (Ind.1997); *State ex rel. Firestone v. Parke Cir. Ct.*, 621 N.E.2d 1113 (Ind.1993); *Brown v. Penn Cent. Corp.*, 510 N.E.2d 641(Ind.1987); *Calumet Nat'l Bank v. American Tel. & Tel. Co.*, 654 N.E.2d 816 (Ind.Ct.App.1995); *Calumet Nat'l Bank v. American Tel. & Tel. Co.*, 647 N.E.2d 689 (Ind.Ct.App.1995), *trans. denied; CSX Transp., Inc. v. Clark*, 646 N.E.2d 1003 (Ind.Ct.App.1995); *Huff v. Langman*, 646 N.E.2d 730 (Ind.Ct.App. 1995); *Ritz v. Indiana & Ohio R.R., Inc.*, 632 N.E.2d 769 (Ind.Ct.App.1994), *trans. denied; CSX Transp., Inc. v. Rabold*, 593 N.E.2d 1277 (Ind.Ct.App.1992), *trans. denied.*

3. 1 RS 1852, Ch. 23 § 12 [old statute] and Ind. Code § 32–1–2–12 (Ind.1993) read as follows:

> Any conveyance of lands worded in substance as follows: "A.B. conveys and warrants to C.D." (here describe the premises) "for the sum of" (here insert the consideration,) the said conveyance being dated and duly signed, sealed, and acknowledged by the grantor, shall be deemed and held to be a conveyance in fee simple to the grantee, his heirs and assigns, with covenant from the grantor for himself and his heirs and personal representatives, that he is lawfully seized of the premises, has good right to convey the same, and guarantees the quiet possession thereof....

458 N.E.2d at 253. The general rule is that conveyance to a railroad of a strip, piece, or parcel of land, without additional language as to the use or purpose to which the land is to be put or in other ways limiting the estate conveyed, is to be construed as passing an estate in fee, but reference to a right-of-way in such conveyance generally leads to its construction as conveying only an easement. *L. & G. Realty & Construction Co. v. Indianapolis,* (1957), 127 Ind.App. 315, 322, 139 N.E.2d 580, 585.

*Brown,* 510 N.E.2d at 644.

In *Brown,* the deed conveyed to the railroad "the Right of Way for the use of the Railroad ..." and "a strip Two hundred feet in width ... for Depot and Rail Road purposes." *Id.* The dispute was over whether the 200 foot strip used for the depot was an easement. We found that the deed, clearly falling within the general rule articulated above, conveyed only an easement. Here, as in *Brown,* the handwritten conveyance forms contain, along with the term "right of way," additional language indicating the purpose for which the land was to be used: "Land, Right of way and Right of drainage *for its Railway* " (emphasis added and differences in capitalization in various deeds ignored). We conclude that the conveyances were merely easements.

Conrail and West Central argue that should this Court determine that the deeds conveyed only a right of way easement, we should hold that the deeds in question are ambiguous. We think that the grantors' intent to convey an easement to the railroad is clearly expressed in the handwritten deeds and we find the deeds to be unambiguous.[4]

## II

Property law in Indiana provides that, upon abandonment by the railroad, a railroad easement terminates and the fee simple interest in the land reverts to the grantor, or the grantor's heirs, assigns or devisees. More precisely, the title of the grantor no longer is subject to the burden of the easement. *Lake County Trust Co. v. Lane,* 478 N.E.2d 684, 688 (Ind.Ct.App. 1985)(where railroad held only an easement "upon abandonment of the railroad, the property passed to the adjoining landowners"), *trans. denied; Richard S. Brunt Trust v. Plantz,* 458 N.E.2d 251, 255 (Ind.Ct.App.1983)("abandonment of railroad operations extinguished the easements and permitted the adjoining landowners as title-holders in fee simple to reclaim the easements" (citing cases)); *L. & G. Realty & Construction Co. v. City of Indianapolis,* 127 Ind.App. 315, 330, 139 N.E.2d 580, 588 (1957)(where easement granted for railroad purposes, upon abandonment the easement automatically reverts to the heirs and devisees of the grantors).[5]

**4.** Appellants Conrail and West Central argue that ambiguous railroad deeds must be construed in a manner consistent with prevailing public policy in accord with the language of *Ross, Inc. v. Legler,* 245 Ind. 655, 199 N.E.2d 346 (1964). In *Ross, Inc.,* this Court noted:

Although in the event of ambiguity as to the character of the interest or title in land conveyed for right-of-way purposes, public policy normally favors the reversion of such land to the original owner, his heirs and assigns on abandonment thereof by a railroad, a possible and reasonable exception within the public policy might exist where such easement and right-of-way is conveyed to and dedicated by a governmental body for a public right-of-way. *Ross, Inc.,* 245 Ind. at 660, n. 2, 199 N.E.2d 346. Appellants contend that such an exception is warranted here. In light of the unambiguousness of the deeds in question, we need not decide if the preservation of railway corridors as recre-

ational trails is a reasonable exception to our state's public policy favoring reversion to the original or adjacent landowner.

**5.** *See also Penn Central Corp. v. U.S. R.R. Vest Corp.,* 955 F.2d 1158 (7th Cir.1992)(7th Circuit applying Indiana law determined that when railroad has easement for a railway, "the abandonment of rail service automatically terminates the interest, so that the exclusive rights over the land revert to the owner of the fee simple"). *Cf. Smith v. Holloway,* 124 Ind. 329, 330, 24 N.E. 886, 887 (1890)(when owner of land only grants easement, grantor remains the owner in fee and may make all lawful use of the land but may not interfere with the use of the easement); *Cleveland, Cincinnati, Chicago and St. Louis Railway Company v. Cross,* 87 Ind.App. 574, 578, 162 N.E. 253, 255 (1928)("when the railroad abandoned or removed from the strip of land over which it had the right of way the land was discharged of that burden").

■ We look to Indiana common law and Indiana statutes in order to determine what constitutes abandonment for purposes of extinguishing a railroad's right-of-way easement. Under the common law of this state, the intent to abandon was a necessary element of abandonment of an easement created by express grant. *Seymour Water Company v. Lebline,* 195 Ind. 481, 489, 144 N.E. 30, 33 (1924). The question of abandonment was a question of intention to be determined from the facts of the case. *Perry v. Carey,* 68 Ind.App. 56, 60, 119 N.E. 1010, 1011 (1918). Although an easement acquired by actual grant was not extinguished by mere nonuse, nonuse plus an act indicating an intent to abandon may have had the effect of extinguishing the easement. *Id. See also Brock v. B & M Moster Farms, Inc.,* 481 N.E.2d 1106 (Ind.Ct.App.1985)(easement created by grant generally not lost through mere nonuse); *Bauer v. Harris,* 617 N.E.2d 923 (Ind.Ct.App.1993)(abandonment of prescriptive easement requires nonuse and intent to abandon).

West Central explicitly and Conrail impliedly argued to the trial court that abandonment had not occurred as evidenced by Conrail's having continued to pay real estate taxes for the property and Conrail's having left in place the bridges, culverts and drainage tiles.[6] *Brief in Support of Defendant's [West Central] Motion for Summary Judgment.* On the other hand, the facts are undisputed that the Interstate Commerce Commission issued Conrail a certificate of abandonment on February 24, 1982, authorizing Conrail to discontinue common carrier rail service on the line. By 1985, Conrail had removed the tracks and other materials but left in place structures such as bridges, culverts and drainage tiles. Between 1982 and 1994 Conrail continued to pay the real estate taxes on the land.

If Indiana common law controlled the outcome of whether or not Conrail intended to abandon its right of way easement, we believe that the foregoing demonstrates genuine issues of material fact precluding summary judgment. However, we conclude that the common law on whether abandonment has occurred was superseded by the General Assembly. In a statute enacted in 1987, the legislature determined that a railroad abandons its right of way when (1) the ICC issues a certificate relieving the railroad of its common carrier obligation on the right of way and (2) "rails, switches, ties, and other facilities" have been removed from the right of way. Ind.Code § 8–4–35–4 (1993) (repealed 1995) (current version at Ind.Code § 32–5–12–6(a)(2) (Supp.1996)).[7] The legislature of this state decided that issuance of a certificate of abandonment and removal of railroad "facilities" sufficiently evidence a railroad's intent to abandon. If both of these statutory elements of abandonment were met, then, as a matter of law, abandonment occurred, at least as of the effective date of the statute, July 1, 1987.[8]

■ West Central argues that under this statute, no abandonment occurred where Conrail did not remove such "other facilities" as trestles, bridges, culverts, drainage tiles and subsurface ballast. When construing the meaning of the terms "other facilities," we apply the principle of *ejusdem generis,* which

---

**6.** Conrail argued to the trial court that the doctrine of shifting public uses precludes abandonment of the corridor. *Consolidated Rail Corporation's Answer Brief to Plaintiffs' Motion for Partial Summary Judgment* and *Defendant, Consolidated Rail Corporation's, Reply Brief in Support of Motion for Summary Judgment.* For this argument to succeed, Conrail must not have abandoned the easement prior to deeding the corridor to West Central. Only then would the right of way easement continue to exist for a similar public purpose. Because we hold that the easement was abandoned, we do not address the viability of the doctrine of shifting public uses in Indiana.

**7.** This statute read as follows:

For the purposes of this chapter, a railroad abandons its rights-of-way when:
  (1) the Interstate Commerce Commission issues a certificate of public convenience and necessity relieving the railroad of its common carrier obligation on the right-of-way; and
  (2) rails, switches, ties and other facilities have been removed from the right-of-way.
Ind.Code § 8–4–35–4 (1993) (repealed 1995).

**8.** While the statute can be read to apply retroactively, we treat it for purposes of this opinion as the legal definition of "abandonment" provided by the legislature for use on and after July 1, 1987, the effective date of the statute.

maintains that "where words of specific and limited signification in a statute are followed by general words of more comprehensive import, the general words shall be construed as embracing only such persons, places, and things as are of like kind or class to those designated by the specific words, unless a contrary intention is clearly shown by the statute. *Thompson v. Thompson* (1972), 259 Ind. 266, 275–76, 286 N.E.2d 657, 662–63." *Drake v. Mitchell Community Schools*, 649 N.E.2d 1027, 1030 (Ind.1995).

Following this rule of statutory construction, the phrase "other facilities" includes only the railroad materials consistent with the materials listed in the statute: rails, ties and switches. Trestles, bridges, culverts, drainage tiles and subsurface ballast are not the same type of railroad materials as rails, ties and switches. Therefore, pursuant to Ind.Code § 8–4–35–4 (1993)(repealed 1995), we conclude that Conrail, having received the ICC's authorization to abandon and having removed the rails and ties, as a matter of law, abandoned the railroad right of way no later than July 1, 1987.[9]

### III

Conrail and West Central characterize their argument as one promoting the public policy favoring the preservation of railway corridors as recreational trails. In support of its motion for summary judgment before the trial court, Conrail points to the United States National Trails System Act, 16 U.S.C. § 1241 *et seq.* (Trails System Act),[10] and Ind.Code § 8–3–1–21.1 (1993)[11] as evidence of the national and state public policy of preserving railroad rights-of-way. *Defendant, Consolidated Rail Corporation's, Motion for Summary Judgment.* We do not disagree that Congress and the Indiana Legislature may have the authority to preserve the right of the public in existing rail corridors. *See Preseault v. I.C.C.*, 494 U.S. 1, 110 S.Ct. 914, 108 L.Ed.2d 1 (1990)(holding the Trails System Act, as amended in 1983, to be a valid exercise of Congressional power under the Commerce Clause). *Cf. Preseault v. United States*, 100 F.3d 1525 (Fed.Cir. 1996)(in banc)(plurality opinion of Plager, J.)(holding exercise of government authority under Trails System Act to be a compensable taking on facts presented). However, West

**9.** The current statute, Ind.Code § 32–5–12–6, in effect since May 10, 1995, reads as follows:

[A] right-of-way is considered abandoned if any of subdivisions (1) through (3) apply:

\*   \*   \*   \*   \*   \*

(2) After February 27, 1920, both of the following occur:

(A) The Interstate Commerce Commission issues a certificate of public convenience and necessity relieving the railroad of the railroad's common carrier obligation on the right-of-way.

(B) The earlier of the following occurs:

(i) Rails, switches, ties, and other facilities are removed from the right-of-way, making the right-of-way unusable for continued rail traffic.

(ii) Ten (10) years have passed after the date on which the Interstate Commerce Commission issued a certificate of public convenience and necessity relieving the railroad of its common carrier obligation on the right-of-way.

\*   \*   \*   \*   \*   \*

Ind.Code § 32–5–12–6 (1993 and Supp.1996). Under this definition, even if we would accept West Central's argument that Conrail did not remove "other facilities," abandonment would have occurred no later than 1992, ten years after Conrail received the ICC's certificate authorizing abandonment.

**10.** In 1968, Congress enacted the United States National Trails System Act to establish recreational trails throughout the country. 16 U.S.C. § 1241 *et seq.*, (1968). Not until 1983 did Congress amend the Trails System Act to provide for interim trail use of railroad rights-of-way. *See* 16 U.S.C. § 1247(d) (1983 Amend.). In 1982, when the ICC issued the certificate of abandonment at issue in this case, the provisions of the Trails System Act which might help Conrail and West Central had not yet been enacted. *See* 16 U.S.C. § 1247(d) ("Interim use of railroad rights-of-way") (1983 Amend.). In any event, this "rail-banking" law does not provide for the seizure of railway rights-of-way for interim trail use *after* railroads already have abandoned the rights-of-way. Rather, the statute attempts to delay abandonment by providing that interim use of a railroad right-of-way easement shall not be treated as abandonment in the case where that interim use is for "restoration or reconstruction for railroad purposes." 16 U.S.C. § 1247(d).

**11.** Indiana Code § 8–3–1–21.1 (1993) merely explains that upon notice from the Indiana department of transportation, the department of natural resources has ninety days during which to make a study of the feasibility of converting the right-of-way to recreational purposes.

Central and Conrail do not rely upon any action taken pursuant to such legislative enactments to support the argument urging this Court to reverse the trial court's grant of summary judgment. In the absence of any such action, we believe the disposition of this case is governed by the common law set forth in part I and the statutory law set forth in part II of this opinion

### Conclusion

Having found that the deeds unambiguously convey to the railroad a mere right-of-way easement, we grant transfer, adopt the judgment and opinion of the Court of Appeals pursuant to App. R. 11(B)(3), and affirm the trial court.

SHEPARD, C.J., and DICKSON and SELBY, JJ., concur.

BOEHM, J., not participating.