Suyoung CHOUNG, Appellant–Plaintiff,

v.

Lillian M. IEMMA, Anthony J. Iemma, Karl Hammond d/b/a Hammond Construction Co., Advanced Home Condition Analysis Co., Lena Howard and B & F Realty, Appellees–Defendants.

No. 71A04–9806–CV–288.

Court of Appeals of Indiana.

March 16, 1999.

Rehearing Denied June 16, 1999.

Jay Lauer, South Bend, Indiana, Attorney for Appellant.

Robert J. Palmer, Bradley L. Varner, May, Oberfell & Lorder, South Bend, Indiana, Attorneys for Appellee Karl Hammond d/b/a Hammond Construction Co.

Terry Shewmaker, Consentino, Shewmaker & Christofeno, Elkhart, Indiana, Attorney for Appellees B & F Realty and Lena Howard.

Christopher Crawford, Iemma & Hughes, Elkhart, Indiana, Attorney for Appellees Anthony and Lillian Iemma.

## OPINION

BROOK, Judge

### Case Summary

Appellant-plaintiff Suyoung Choung ("Choung") appeals from the trial court's grant of summary judgment in favor of appellees-defendants Lillian Iemma, Anthony J. Iemma, Karl Hammond d/b/a Hammond Construction Co., B & F Realty, and Lena Howard following Choung's suit for damages for breach of an implied warranty of fitness for habitation, fraud and negligence.[1]

### Issues

Choung raises three issues for our review which we restate as:

(1) whether the trial court erred in granting summary judgment in favor of the Defendants because genuine issues of material fact existed regarding Choung's claims for breach of the implied warranty of habitability, fraud and negligence;

(2) whether the Defendants were under a duty to inform Choung the property had been relocated and placed on a rebuilt foundation; and

(3) whether the "AS IS" waiver provision in the land contract precluded Choung from bringing any causes of action, including fraud, for any defects or deficiencies in the property.

### Facts and Procedural History

The facts relevant to the appeal are that Choung signed a purchase agreement with Lillian Iemma ("Lillian") on October 13, 1992 to purchase certain real estate owned by Lillian, commonly known as 57804 County Road 13, Elkhart, Indiana, for the price of $105,000.00. Paragraph eight (8) of the purchase agreement permitted Choung to seek a professional, independent inspection of the condition of the real estate and its improvements. If Choung requested such an inspection, the inspection was to be listed under "further conditions" of the offer to purchase. Paragraph 18 of the purchase agreement provided that a complete home inspection was to be done within five days after acceptance of the offer and approved by Choung. Anthony Iemma ("Anthony") handled this transaction as Lillian's attor-

---

1. Choung was unable to obtain service upon appellee-defendant Advanced Home Condition Analysis Co., and no appearance was entered on its behalf. Advanced Home was not included in the joint motion for summary judgment, and therefore, the trial court's entry of summary judgment and Choung's appeal thereof does not pertain to them. Also, we shall refer to the named appellees in this opinion as "the Defendants" collectively unless otherwise specified.

ney-in-fact. B & F Realty, represented by their agent Lena Howard ("Lena"), was the listing broker for this transaction. On October 17, 1992, Lena commissioned Advanced Home Condition Analysis Co. ("Advanced Home") to perform a home condition inspection on the property at 57804 County Road 13, which was approved by Choung upon completion. On October 22, 1992, Choung, Lillian, and her attorney Anthony held a closing to the transaction by executing a purchaser's closing statement and a land contract.

·At the closing, Choung signed a land contract that contained an acknowledgment that Advanced Home had inspected the premises and that "[a]ll items of deficiency or commented upon that need to be cured are hereby waived by Purchaser [Choung] and Purchaser has received adequate consideration and discount off the purchase price to make all necessary repairs." The land contract also contained a provision that: "Vendor [Lillian] makes no warranties of habitability and sells the premises 'AS IS'." The purchase agreement contained a similar provision: "[t]his property purchased in AS IN NOW CONDITION." According to Choung, Lillian's house had been relocated from the U.S. Route 20 bypass to its present location and had been placed on a newly constructed foundation built by Karl Hammond d/b/a Hammond Construction Co. ("Hammond Construction"). Choung maintains that he was never informed by any party involved in this transaction that the property had been moved from another location or that the property had been placed upon a newly constructed foundation. The only disclosure made to Choung about the property was contained in the listing advertisement from Lena and B & F Realty stating that the house was a "1992 Rebuilt Walkout Ranch on Elkhart River." However, Anthony, by affidavit, and Lena, by deposition, both stated that they informed Choung at closing that the property had been relocated. Anthony also contends that a price adjustment for the relocation was made.

After Choung purchased the real estate, he began to experience numerous problems. He suffered damage to the house, including but not limited to water flooding; high levels of E. Coli bacteria from the flood water intrusion; cracks in the garage floor; bulging of lower level exterior walls; incorrect footing depth; incorrect drainage for footers; and incorrect placement of the septic system. Choung attributed these problems to the relocation of the house onto a faulty foundation built by Hammond Construction. Upon discovery of these defects, and within one year of the transaction, Choung, through his attorney, gave written notice to Lillian and Anthony and requested that they cure the defects; they did not.

On October 7, 1994, Choung filed a complaint for breach of an implied warranty of fitness for habitation, also known as·an "implied warranty of habitability," against the Defendants. Choung sought both compensatory and punitive damages for his alleged damages. The Defendants separately denied Choung's allegations and filed motions for judgment on the pleadings pursuant to Ind. Trial Rule 12(C), arguing that no implied warranty of habitability existed. The trial court granted a judgment on the pleadings for Lena and B & F Realty but denied the motions for Lillian, Anthony and Hammond Construction. On April 13 and June 6, 1995, Choung filed motions for leave to amend his complaint, which were granted. Choung then filed an amended complaint against the Defendants seeking damages for breach of the implied warranty of fitness for habitation, fraud, negligence, and negligence in the inspection and analysis against Advanced Home. In his complaint, Choung alleged that (1) the Defendants breached the implied warranty of habitability because the inherent defects in the home's condition and structure caused by the faulty foundation were latent; (2) the Defendants fraudulently misrepresented and concealed the fact that the house had been moved and placed upon a new foundation; (3) Lillian, Anthony and Hammond Construction negligently constructed the foundation to the house, together with the garage floor, drainage for the footers, and the incorrect placement of the septic system; and (4) Advanced Home's negligent inspection of the home resulted in Choung suffering damages to his property.

On July 28, 1997, Lillian, Anthony, Hammond Construction, Lena, and B & F Realty filed a joint motion for summary judgment. A hearing on this matter was held on September 11, 1997. On January 29, 1998, the trial court granted the Defendants' motion for summary judgment. The trial court held that Choung had purchased the property "AS IS"; the land contract signed by Choung and Lillian specifically provided that an inspection had been conducted and waived all items of deficiency in consideration of the discounted purchase price; Choung waived all causes of action against the Defendants; and there was no representation by the Defendants that the property had never been moved.

### Discussion and Decision

### I. Standard of Review for Summary Judgment

Choung first argues there were genuine issues of material fact regarding the Defendants' liability for breach of the implied warranty of habitability, fraud and negligence sufficient to preclude summary judgment in their favor. The purpose of summary judgment is to end litigation about which no factual dispute exists and which may be determined as a matter of law. *Luider v. Skaggs*, 693 N.E.2d 593, 595 (Ind.Ct.App. 1998), *trans. denied.* When reviewing a trial court's ruling on a motion for summary judgment, this Court applies the same standard as the trial court. *Id.* On appeal, this Court must determine whether there is a genuine issue of material fact and whether the law has been correctly applied by the trial court. *City of Elkhart v. Agenda: Open Government, Inc.*, 683 N.E.2d 622, 625 (Ind.Ct.App. 1997), *trans. denied* (1998).

Summary judgment is appropriate only if the designated evidentiary material shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Ind. Trial Rule 56(C); *Wolf v. Boren*, 685 N.E.2d 86, 87 (Ind.Ct.App.1997), *trans. denied* (1998). The party moving for summary judgment bears the initial burden of making a prima facie showing that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Luider*, 693 N.E.2d at 595. Once a movant meets these two requirements, the burden then shifts to the non-moving party to set forth specifically designated facts showing the existence of a genuine issue. *Id.* We resolve any doubts as to any facts or inferences to be drawn therefrom in favor of the non-moving party. *Id.*

■ Choung suggests there are genuine issues of material fact, specifically disputing Anthony's contentions that: (1) he was informed that the house was relocated and rebuilt; (2) the purchase price was discounted accordingly; and (3) he waived any future claims on the house. However, despite a conflict on some elements of a claim, summary judgment may be proper when no dispute exists with respect to the facts which are dispositive of the litigation. *Id.* We conclude the trial court correctly determined there were no genuine issues as to any material fact regarding the Defendants' liability and that they had no liability in this matter.

Choung and Lillian signed a purchase agreement which included a provision that "[t]his property purchased in AS IN NOW CONDITION." Choung was also advised and permitted to have his own inspection conducted, which he approved. He contracted with Advanced Home to perform an inspection of Lillian's house. At the closing, Choung and Lillian signed a land contract that contained a warranty of habitability disclaimer and an "AS IS" provision. In addition, Choung signed an acknowledgment provision that Advanced Home had inspected the premises and that all deficiencies were waived in consideration of the discounted purchase price he received. Because Choung signed a land contract that specifically provided that Lillian was not making any warranty of habitability and that she was selling the property "AS IS," he waived any cause of action or remedy available for latent defects. Additionally, Choung acknowledged he had ordered an inspection of the premises and had waived any deficiencies in consideration of the discounted price. Therefore, Choung's complaint for breach of an implied warranty for habitation, fraud and negligence was properly dispensed with by summary judgment.

### A. Implied Warranty of Fitness for Habitability

■ Choung contends the relocation of the house onto a newly constructed foundation at 57804 County Road 13 was a latent defect which constituted a breach of the implied warranty of fitness for habitation. An implied warranty of fitness for habitation warrants that a house will be free from defects which substantially impair the use and enjoyment of that house. *R.N. Thompson & Associates, Inc. v. Wickes Lumber Co.*, 687 N.E.2d 617, 620 (Ind.Ct.App.1997), *trans. denied* (1998). A breach of the implied warranty of habitability is established by proof of a defect which substantially impairs the use and enjoyment of the residence. *Id.* In *Theis v. Heuer*, 264 Ind. 1, 12, 280 N.E.2d 300, 306 (1972), the supreme court held that an implied warranty of habitability in the sale of a new house extended from a "builder-vendor" to an immediate purchaser. A "builder-vendor" is a person in the business of building and selling homes for profit. *Callander v. Sheridan*, 546 N.E.2d 850, 852 (Ind. Ct.App.1989). Our supreme court further extended the implied warranty of habitability to a second and subsequent purchasers from the builder-vendor in the case of latent defects which are not discoverable upon the purchaser's reasonable inspection and which become manifest after the purchase of the home. *Barnes v. Mac Brown & Company, Inc.*, 264 Ind. 227, 229, 342 N.E.2d 619, 620–621 (1976). However, *Vetor v. Shockey* expressly rejected an attempt to apply the doctrine of implied warranty of habitability to the sale of a used home by a non builder-vendor, reasoning that the vendor has no greater expertise than the purchaser in determining the quality of the house; thus, the implied warranty of habitability is limited to builder-vendors. 414 N.E.2d 575, 577 (Ind. Ct.App.1980).

■ Here, we need not address whether the movement of the house onto a newly constructed foundation constituted a latent defect that impaired Choung's enjoyment of the house and breached the implied warranty because Choung has failed to establish that the Defendants were builders-vendors. The evidence shows they did not assume the responsibilities of a builder-vendor. Specifically, Anthony and Lillian, as sellers of the premises, owned and occupied the home, but did not build it. Although Lillian hired Hammond Construction to install the appropriate foundation and relied on their expertise, they neither built the house nor were involved in its sale. Moreover, Lena and B & F Realty were in the business of selling homes, but they did not build the home in question. Thus, the Defendants are exempt from liability under the theory of implied warranty of habitability because they are not builders-vendors.[2]

■ Furthermore, the uncontroverted evidence establishes that any implied warranty of habitability was expressly disclaimed in the purchase agreement and land contract that Choung signed. Paragraph eight (8) of the purchase agreement stated that "[t]his property purchased in AS IN NOW CONDITION." The "AS IS" provision included in the land contract also protected the Defendants from liability for latent defects because it waived any implied warranty. Paragraph five (5) of the land contract provided:

> 5. Warranties of Vendor. Vendor hereby warrants that Vendor has good and merchantable title to the Real Estate, free and clear of any and all liens, leases, restrictions and encumbrances, except as follows: . . .

---

**2.** "A 'builder' means a person who constructs new homes for sale[.]" IND. CODE § 34-4-20.5-6. *Callander v. Sheridan*, 546 N.E.2d at 852. An implied warranty of habitability warrants that a house will be free from defects. *R.N. Thompson & Associates, Inc.*, 687 N.E.2d at 620. The implied warranty of habitability does not require the dwelling to be rendered totally uninhabitable before a breach; rather a breach is established by proof of a defect which substantially impairs the use and enjoyment of the residence. *Id.* This Court does not believe that the implied warranty of habitability extends to any "builder" except the builder of the house itself. Although Hammond Construction built the foundation, we do not know who built the drainage and septic system. Because a foundation and drainage and septic system are not habitable, the implied warranty of habitability cannot be extended to them. However, a negligence action might apply to such "builders".

*(iii) Vendor makes no warranties of habitability and sells the premises "as is"* (emphasis supplied).

Additionally, the release provision included in the inspection clause of the land contract protected the Defendants from liability for latent defects. In the inspection clause, Choung acknowledged that he had an inspection conducted and had waived all items of deficiency in consideration of a discounted purchase price. Thus, the implied warranty of habitability was waived as to the sale of this house. Nevertheless, Choung cites *Callander* for the proposition that the inspection clause does not release the Defendants from liability for breach of the implied warranty of habitability for latent defects. 546 N.E.2d at 853. However, his argument disregards the fact that Callander was a builder-vendor, thereby precluding his release from liability for the latent defects. *See Barnes,* 264 Ind. at 229–230, 342 N.E.2d at 620–621 (builder-vendor's liability for a breach of the implied warranty of fitness for habitation is limited to latent defects). Therefore, because the Defendants cannot be held liable for a breach of an implied warranty of habitability, the trial court properly entered summary judgment in their favor.

### B. Negligence

We first note Choung has failed to argue or cite to any cases or relevant authority in support of his contention that Lillian, Anthony, and Hammond Construction negligently constructed the foundation of the house, together with the garage floor, drainage for the footers, and the septic system. Ind. Appellate Rule 8.3(A)(7) requires that the appellant support each contention with an argument, including citations to legal authorities, statutes, and the record for support. Failure to present any argument or citations to authority in support of Choung's negligence contention constitutes a waiver of the alleged error for appellate review. *See, e.g., American Family Insurance Group v. Blake,* 439 N.E.2d 1170, 1175 (Ind.Ct.App. 1982); *Whisman v. Fawcett,* 470 N.E.2d 73, 80 (Ind.1984).

Waiver notwithstanding, Choung's negligence complaint is without merit. The theory of negligence protects interests related to safety or freedom from physical harm, including not only personal injuries, but also damage caused by defective personal property. *Jordan v. Talaga,* 532 N.E.2d 1174, 1181 (Ind.Ct.App.1989), *trans. denied.* For example, the damages to an automobile wrecked by reason of its own bad brakes, as well as damages to other property in the vicinity, are compensable through an action in negligence. *Id.*

> But where there is no accident, and no physical damage, and the only loss is a pecuniary one, through loss of value, or use of the thing sold, or the cost of repairing it, the courts have adhered to the rule ... that purely *economic interests* are not entitled to protection against mere negligence, and so have denied recovery [emphasis in original].

*Id.,* citing W. Prosser, *Handbook on the Law of Torts,* § 101 at 665 (4th Ed.1971). "Economic loss may be defined as 'damages for inadequate value, costs of repair and replacement of the defective product, or the consequent loss of profits ... as well as the diminution in the value of the product because it is inferior in quality ... to recover in negligence there must be a showing of harm above and beyond disappointed expectations [ellipses in original].' " *Jordan,* 532 N.E.2d at 1181, *quoting Redarowicz v. Ohlendorf,* 92 Ill.2d 171, 177, 65 Ill.Dec. 411, 413, 441 N.E.2d 324, 327 (Ill.1982).

In *Redarowicz,* a homeowner sued the builder of his home for the negligent construction of the chimney and adjoining brick wall. The court held that a complaint seeking damages for the cost of replacement and repair for qualitative defects in a product does not belong in tort. 92 Ill.2d at 177, 65 Ill.Dec. at 413, 441 N.E.2d at 327. The additional expenses for living conditions incurred by the buyer were economic losses not recoverable under a negligence theory. *Id.*

In *Jordan,* a homeowner brought an action against the developers of his subdivision alleging theories of negligence and breach of the implied warranty of habitability. The homeowner sought damages for the diminution in the value of his house and personal

property damage caused by severe water and drainage problems on his property. This Court held that the damage to the homeowner's property and the diminution of the house's fair market value were the result of periodic flooding. *Jordan*, 532 N.E.2d at 1182. Relying on *Redarowicz*, we concluded that the damages were economic in nature because they represented deterioration and disappointed expectations, which are not recoverable under a negligence theory. *Id.*

Here, Choung complains that he suffered property damage to his house, foundation, garage, footers, and septic system because of a poorly constructed foundation, resulting in a loss of value to the house and the costs to repair and replace the damages. However, these claims are economic in nature because they did not arise from physical harm to Choung or his personal property; instead, they arise from a loss of value and cost of repair to his house. Choung's claims are not recoverable under negligence; his theory of recovery lies in contract. "A buyer's desire to enjoy the benefit of his bargain is not an interest that tort law traditionally protects." *Jordan* 532 N.E.2d at 1181, *quoting Redarowicz*, 92 Ill.2d at 177, 65 Ill.Dec. at 413, 441 N.E.2d at 327; *see also* W. Prosser, *Handbook on the Law of Torts*, § 92 at 613 (4th Ed.1971). The trial court properly entered summary judgment in favor of Lillian, Anthony, and Hammond Construction.

### *II. Duty to Inform*

Next, Choung asserts the Defendants had a duty to disclose the fact that the house at 57804 County Road 13 had been relocated and placed upon a newly constructed foundation. Ordinarily, a seller of real estate is not bound to disclose any material facts unless there exists a relationship for which the law imposes a duty of disclosure. *First Bank of Whiting v. Schuyler*, 692 N.E.2d 1370, 1372 (Ind.Ct.App.1998), *trans. denied.* However, where a buyer makes inquiries about a condition on, the qualities of, or the characteristics of the property, there exists a relationship for which the law imposes a duty of disclosure. *Indiana Bank and Trust Co. of Martinsville, Indiana v. Perry*, 467 N.E.2d 428, 431 (Ind.Ct.App.1984); *see*

*also Thompson v. Best*, 478 N.E.2d 79, 84 (Ind.Ct.App.1985), *trans. denied.* When a buyer makes such inquiries, it becomes incumbent upon the seller to fully declare any and all problems associated with the subject of inquiry. *Thompson*, 478 N.E.2d at 84.

If the seller undertakes to disclose facts within his knowledge, he must disclose the whole truth without concealing material facts and without doing anything to prevent the other party from making a thorough inspection. *Schuyler*, 692 N.E.2d at 1373. Mere silence does not constitute actionable fraud; rather, the silence must be accompanied by any behavior of the seller to suppress the truth or to a withdrawal or distraction of the other parties' attention from the facts to become fraudulent. *Id.* The failure to disclose all material facts by one upon whom the law imposes a duty to disclose constitutes actionable fraud. *Id.* at 1372.

Choung suggests the listing advertisement imposed a duty upon the Defendants to disclose all the facts relating to the relocation of the house, the construction of the foundation, and its building problems. The advertisement stated that the house was a "rebuilt walkout ranch." Here, the advertisement put Choung on notice, which required him either to make further inquiry of Lillian regarding the rebuilding or to get an inspection performed. Choung made no further inquiries about the rebuilding language nor specifically asked anyone about the condition of the foundation. The land contract clearly placed the burden upon Choung as to the discovery of any defects. The purchase agreement and land contract specifically advised Choung to seek an independent inspection on the quality and condition of the house. Choung took advantage of this opportunity by having Advanced Home perform an inspection and relied on their representation of the house's condition. Choung's reliance on the Defendants' statements and silence was immaterial because Advanced Home examined the property and discovered minimal problems.

Moreover, the Defendants made no specific representation that the house had not been

relocated. Regardless, Choung executed a land contract, purchasing the property "AS IS" with no warranty of habitability and waiving any deficiencies in the house. Thus, any claim of liability arising from the relocation of the house onto its present site prior to the agreement would have been waived by either the land contract's "AS IS" clause or waiver of deficiency language. The Defendants did not have a duty to disclose to Choung that the house had been relocated and placed upon a newly constructed foundation; therefore, Choung cannot maintain his fraud claims based on such failure to disclose. The trial court correctly determined that the Defendants had no duty to disclose, and summary judgment was proper.

### III. Fraud Claims Negate an "AS IS" Provision

Finally, Choung alleges that his causes of action, including his claims for actual and constructive fraud, sufficiently negate the "AS IS" provision of the land contract to preclude summary judgment. As noted above, Choung cannot maintain his fraud claims because the Defendants did not have a duty to disclose the relocation of the house and the newly constructed foundation; therefore, we need not address this issue further.

### Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed.

SHARPNACK, C.J., and SULLIVAN, J., concur.