STATE FARM FIRE & CASUALTY
COMPANY, Appellant–
Defendant,

v.

T.B., a minor by her parents and next
friends, George BRUCE and Cathy
Bruce, Appellees–Plaintiffs,

Murl L. Dobson and Vicki L.
Dobson, Defendants.

No. 53A01–9908–CV–266.

Court of Appeals of Indiana.

May 31, 2000.

Julia Blackwell Gelinas, Hugh Reynolds, Jr., James Dimos, Locke, Reynolds, LLP, Indianapolis, Indiana, Attorneys for Appellant.

Julie L. Michaelis, Wooden & McLaughlin, LLP, Indianapolis, Indiana, Attorney for Appellees.

## OPINION

ROBB, Judge

### Case Summary

State Farm Fire and Casualty Company (State Farm) appeals from the trial court's order granting a motion for summary judgment in favor of T.B.[1] We affirm in part and reverse and remand in part.

### Issues

State Farm raises two issues for our review, which we restate as:

1. Whether the trial court properly granted summary judgment in favor of T.B. when the trial court found that State Farm was collaterally estopped from raising the issue of the childcare exclusion in the homeowner's policy as a defense; and

2. Whether the trial court properly granted summary judgment in favor of T.B. when the trial court awarded damages which exceed the limits of the homeowner's policy.

### Facts and Procedural History

Vicki Dobson operated a daycare center and had provided childcare for T.B. on and off for approximately ten years. On April 4, 1996, T.B. was present at the Dobsons' home. Vicki left the home for a period of time and, in her absence, T.B. was molested by Vicki's husband, Murl. Murl was later convicted of child molesting.

T.B. subsequently initiated a civil suit against the Dobsons. The Dobsons had homeowner's insurance issued by State Farm which was in effect on April 4, 1996. The policy contained the following provisions:

SECTION II – LIABILITY COVERAGES

COVERAGE L – PERSONAL LIABILITY

If a claim is made or a suit is brought against an insured for damages because of bodily injury or property damage to which this coverage applies, caused by an occurrence, we will:

1. pay up to our limit of liability for the damages for which the insured is legally liable; and

2. provide a defense at our expense by counsel of our choice. We may make any investigation and settle any claim or

---

1. T.B., a minor, is a party to this case by her parents and next friends. For simplicity, we will refer only to T.B. as appellee, and not her parents.

suit that we decide is appropriate. Our obligation to defend any claim or suit ends when the amount we pay for damages, to effect settlement or satisfy a judgment resulting from the occurrence, equals our limit of liability.

. . .

## SECTION II – EXCLUSIONS

1. Coverage L and Coverage M do not apply to:

. . .

(i) any claim made or suit brought against any insured by:

(1) any person who is in the care of any insured because of child care services provided by or at the direction of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently acting on behalf of any insured; or

(2) any person who makes a claim because of bodily injury to any person who is in the care of any insured because of child care services provided by or at the direction of:

(a) any insured;

(b) any employee of any insured; or

(c) any other person actually or apparently acting on behalf of any insured.

This exclusion does not apply to the occasional child care services provided by any insured....

R. 279–81 (emphasis omitted).

State Farm first received notice of T.B.'s claim on May 8, 1997, when T.B.'s counsel sent a letter, dated April 30, 1997, to State Farm. On May 14, 1997, State Farm composed a letter to the Dobsons wherein State Farm stated that there was a question as to whether State Farm was obligated to defend or indemnify the Dobsons and that State Farm was reserving the right to deny coverage. Further, State Farm sent a letter to T.B.'s counsel acknowledging the receipt of his letter and stating that the matter was in the process of being investigated.

On May 30, 1997, T.B. filed her complaint against the Dobsons. State Farm received a copy of this complaint and subsequently took statements from both Vicki and Murl. On June 16, 1997, State Farm sent a letter to the Dobsons advising them that although they were not yet denying coverage to them, previous experience with similar cases resulted in coverage not being provided to insureds and that "it is imperative that [the Dobsons] immediately procure attorney's [sic] of [their] own choosing, at [their] expense, to represent [them] personally and appear in this matter." R. 916.

On July 1, 1997, attorney Barry Brown sent a letter to State Farm indicating that, although he filed an Appearance on behalf of Vicki and Murl, he had not been retained to represent them. He further stated that "it is urgent that I hear from your company as soon as possible regarding the issue of coverage" and that he believed "that there may be specific defenses related to this *Complaint* which should be plead [sic] and raised in early pleadings." R. 910 (emphasis in original).

Another letter, dated October 22, 1997, was sent to State Farm from attorney Jan Campbell. She informed State Farm, "[a]s you know, I sent a coverage opinion letter on August 7, 1997 recommending that State Farm file a declaratory judgment action or defend the insureds under a reservation of rights in order to preserve State Farm's policy defenses." R. 869.

State Farm then sent a letter to Barry Brown on October 27, 1997, denying coverage to the Dobsons. State Farm stated that "we are unable to extend coverage to [the Dobsons] for a defense indemnity of the lawsuit filed against them by [T.B.].... We are informing you of this decision since you are representing them in this matter. After a thorough investiga-

tion of the allegations set forth in the Complaint against Mr. and Mrs. Dobson, we have concluded the allegations against Murl Dobson do not involve an occurrence as defined by the policy." R. 902. The letter went on to further explain why State Farm concluded that it would not provide coverage.

T.B. and the Dobsons tendered an offer of judgment within which the Dobsons agreed to assign all of their rights, interests, and remedies against State Farm arising from their homeowner's policy to T.B. The judgment was accepted by the trial court on November 5, 1997. The judgment resolved that T.B. was a guest in the Dobson home, that the molestation of T.B. had no connection or relationship to the child care services, and that there be a judgment against the Dobsons and in favor of T.B. for $375,000, plus costs and interest.

T.B. then filed her Verified Motion for Order to Appear and to Enforce Judgment by Proceedings Supplemental and Garnishment against State Farm as garnishee defendant. Both T.B. and State Farm filed motions for summary judgment. On March 19, 1999, the trial court granted T.B.'s motion for summary judgment. State Farm now appeals. Additional facts will be supplied as necessary.

### Discussion and Decision

### I. Standard of Review

The purpose of summary judgment is to end litigation where no factual dispute exists and which may be determined as a matter of law. *Choung v. Iemma*, 708 N.E.2d 7, 11 (Ind.Ct.App.1999). On review of a trial court's decision to grant summary judgment, our standard of review is well settled. We apply the same standard of review as the trial court: we must decide whether there is a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Fawcett v. Gooch*, 708 N.E.2d 908, 909 (Ind.Ct.App.1999).

Summary judgment is appropriate only if "the evidence sanctioned by Ind. Trial Rule 56(C) shows that there is no genuine issue of material fact and the moving party deserves judgment as a matter of law." *Id.* (citing *Blake v. Calumet Constr. Corp.*, 674 N.E.2d 167, 169 (Ind.1996)). The party moving for summary judgment has the burden of making a prima facie showing that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Choung*, 708 N.E.2d at 11. Once these two requirements are met by the moving party, the burden then shifts to the non-moving party to show the existence of a genuine issue by setting forth specifically designated facts. *Id.* Any doubts as to any facts or inferences to be drawn therefrom will be resolved in favor of the non-moving party. *Id.*

### II. Collateral Estoppel – Childcare Defense

State Farm argues that summary judgment was not appropriate because the trial court incorrectly determined that State Farm was estopped from asserting any defenses to the collection proceeding, particularly, the defense of the childcare exclusion in the Dobsons' homeowner's policy. State Farm asserts that, although the judgment resolved that the childcare services were independent of the molestation and that T.B. was a guest, the judgment was ambiguous as to T.B.'s actual reason for being present at the Dobsons'. Therefore, State Farm alleges that referring to T.B. as a guest does not preclude it from asserting the childcare defense. We disagree.

### A. Peril

First and foremost, it has been established that an insurance company which refuses to defend an insured acts at its own peril. *See Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 902 (Ind.Ct.App. 1992), *trans. denied.*

An insurer, after making an independent determination that it has no duty to defend, must protect its interest by ei-

ther filing a declaratory judgment action for a judicial determination of its obligations under the policy or hire independent counsel and defend its insured under a reservation of rights.

. . .

"[An insurer] can refuse to defend or clarify its obligation by means of a declaratory judgment action. If it refuses to defend it does so at its peril. . . ." *Id.* (quoting *Cincinnati Ins. Co. v. Mallon,* 409 N.E.2d 1100, 1105 (Ind.Ct.App.1980)). Basically, an insurer, with knowledge that an insured has been sued, cannot close its eyes to the underlying litigation "and then raise policy defenses for the first time after judgment has been entered against the insured." *Id.*

State Farm had been advised that it should either defend the Dobsons or do something to protect its interests. State Farm, fully notified and aware of the situation, chose to do nothing. In so doing, State Farm acted at its own peril and must now face the consequences of its inaction.

 State Farm asserts that the judgment was occasioned by fraud, collusion, or bad faith, and contends that it is not required to provide coverage because the consent judgment was based on these things. However, State Farm produces no evidence which supports its position. Further, we note that State Farm had the opportunity either to defend the Dobsons or protect its own interests, which it chose not to do. Further, although State Farm may be correct in its assertion that it still retained its defenses of fraud, misrepresentation, and collusion, State Farm offers no evidence as to why or how the judgment involved fraud, collusion, or bad faith in its brief before this court. In its brief in support of its motion for summary judgment, all State Farm has offered as evidence of such fraud is that there was testimony that T.B. was present at the Dobson's for childcare and that at Murl's criminal trial T.B. testified that Murl's acts were intentional. State Farm asserts that because prior testimony "contradicts" the

consent judgment that fraud and collusion preclude the validity of the judgment. We disagree. State Farm has failed to demonstrate that T.B. and the Dobsons participated in the alleged fraud, collusion, or bad faith in entering into the consent judgment.

Although State Farm concedes that "an insurer who investigates the allegations made against its insured and decides that it has no duty to defend, does so at its own peril," it asserts that "[t]he 'peril' does not include being bound by any number of extraneous issues that have no bearing on the outcome of the underlying action." Brief of Appellant at 20. However, it was State Farm that made the decision as to what it believed was "extraneous" to the action, which, in hindsight for State Farm, was an erroneous decision. Further, State Farm made this decision when it knew that T.B. had alleged, in her complaint, that Murl's "conduct *negligently and/or recklessly* included and resulted in improper contact with [T.B.'s] person." R. 20 (emphasis added). Thus, the facts as pleaded by T.B. under alternative theories of liability provided that the case could ultimately be determined under either theory: negligence or recklessness. State Farm, although it did send a letter in which it stated that there was not coverage, made its decision denying coverage with the knowledge that there were two theories alleged. State Farm chose to assert that the only possible outcome would result in non-coverage and did not account for the fact that the same facts could, and did, lead to an outcome where there was coverage. State Farm had notice, chose not to defend, and therefore must suffer the consequences of its inaction.

### B. *Childcare Services – Estoppel of the Defense*

 When an issue has been previously decided in another cause of action, it is subject to the doctrine of res judicata, and in this case, specifically collateral estoppel. "Collateral estoppel operates to

bar a subsequent relitigation of the same fact or issue where that fact or issue was necessarily adjudicated in a former suit and the same fact or issue is presented in the subsequent lawsuit." *Wilcox v. State,* 664 N.E.2d 379, 381 (Ind.Ct.App.1996) (citations omitted). Where issue preclusion applies, the first adjudication will be held conclusive, even if the second is on a different claim. *Id.* Collateral estoppel, or issue preclusion, means that, "when an ultimate issue of fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Davis v. State,* 691 N.E.2d 1285, 1288 (Ind. Ct.App.1998) (citation omitted). Thus, the subsequent relitigation of an issue adjudicated in a former suit, if the same issue is presented in the subsequent suit, is barred. *Shell Oil Co. v. Meyer,* 705 N.E.2d 962, 968 (Ind.1998). Therefore, the issue of childcare services and their lack of bearing on the misfeasance involved here, as determined in the judgment, was an issue that has been fully adjudicated and is barred from further adjudication.

However, State Farm argues that "[i]t is against public policy to construe the term "guest" as foreclosing [T.B.] being there for childcare, when such a consideration postulates a fact that is clearly contrary to the truth." Brief of Appellant at 19. Further, State Farm asserts that the application of collateral estoppel is only effective as to facts which were necessary to sustain the judgment and that "[e]stoppel does not extend to matters not expressly adjudicated and which can only be inferred by argument and '[t]here is no estoppel where anything is left to conjecture as to what was necessarily involved and decided, as where the judgment, which might have been based upon one of several grounds, does not show upon which ground it was based.'" Brief of Appellant at 17 (citing *Connecticut Indemnity Co. v. Bowman,* 652 N.E.2d 880, 883 (Ind.Ct.App.1995), *trans. denied,* (quoting *Peterson v. Culver*

*Educ. Found.,* 402 N.E.2d 448, 461 (Ind. Ct.App.1980))).

Although State Farm cites cases in which certain defenses were not addressed in prior judgments, it fails to note the clarity with which it was determined in the consent judgment that indeed, it was decided that the childcare services had absolutely nothing to do with the fact that Murl molested T.B.

The consent judgment clearly stated that T.B. "was present as a guest at the residence of Murl L. Dobson and Vicki L. Dobson...." R. 84. Further, the judgment stated

> that the occurrence of misfeasance ... proximately resulting in serious bodily injury and harm to the Plaintiff was separate from, independent of, and had no direct or indirect factual or legal connection or relationship to Vicki L. Dobson's separate and sole ownership and operation of her limited, part-time child care activities and services. The existence of said day care activities and services is only an independent and coincidental circumstance which does not give rise to any breach of duty or legal responsibility as relevant to the occurrence and injuries....

R. 85.

The issue of the childcare services was fully and clearly addressed. The judgment stated that the daycare had nothing to do with the misfeasance. State Farm knowingly acted at its own peril in its decision to refuse to defend or to protect its own interests in any way in the proceeding which resulted in this consent judgment, and the issue of the childcare services was decided by the judgment. Therefore, State Farm is collaterally estopped from asserting a defense which was fully addressed in a prior judgment.

### C. *Childcare Exception*

■ We further note that regardless of whether State Farm would have been estopped from asserting the childcare defense, there was a section of the home-

owner's policy which included an exception to the childcare exclusion for occasional childcare services provided by the insured. Thus, as T.B. points out, if she "can be considered to have been in anyone's care at the time of this incident, such care . . . must be considered occasional." Brief of Appellees at 7. The childcare service was operated by Vicki, who was not present at the time of the incident. Accordingly, if T.B. was in the care of anyone, it would have been Murl. The policy provided that childcare services, where the person in question exercised independent judgment, were not excluded from coverage. Thus, although Murl occasionally helped out with the children, it was occasional assistance which would be classified as an exception to the childcare exclusion.

■ We additionally note that even if Murl could have been considered an "employee" of Vicki's with respect to her childcare services, Murl's actions in molesting T.B. would not be considered within the scope of his employment, and therefore, neither Vicki, nor the childcare service would be connected or responsible for the molestation. Case law has consistently supported that if the actions of the employee were not authorized, there is no respondeat superior liability. *See Konkle v. Henson*, 672 N.E.2d 450, 457 (Ind.Ct. App.1996) (holding that "the acts of molestation perpetrated by Henson were not acts authorized by the Pentecostal Church" and therefore, respondeat superior liability did not apply). *See also City of Fort Wayne v. Moore*, 706 N.E.2d 604, 607 (Ind.Ct.App.1999), *trans. denied* (if "none of the employee's acts were authorized, there is no respondeat superior liability").

Clearly, even if Murl was considered an employee or one acting on behalf of Vicki,

he would have not been left with T.B. for the purpose of molesting her. He would have been "authorized" to care for children present, not molest them. As such, Murl's involvement with T.B. is even further estranged from Vicki's childcare services.

### III. *Damages*

State Farm argues that the trial court erred in granting summary judgment in an amount that exceeded the $300,000 policy limit.[2] The policy issued to the Dobsons provided coverage for up to $300,000 for each occurrence of personal liability. R. 268. The policy defined occurrence as "an accident, including exposure to conditions, which results in: a. bodily injury; or b. property damage; during the policy period. Repeated or continuous exposure to the same general conditions is considered to be one occurrence." R. 725 (emphasis omitted).

Although neither party specifically addressed the issue of the judgment amount exceeding $375,000 in their motions for summary judgment, the insurance policy and its limits were part of the designated evidence. The policy limit is clear, $300,-000. The evidence does not suggest anything else.

■ Thus, on an appeal from summary judgment, we need only determine whether the trial court properly applied the law to the undisputed facts. *GEICO Ins. Co. v. Rowell*, 705 N.E.2d 476, 480 (Ind.Ct.App.1999). Here, although T.B. may assert that she is entitled to the $375,-000, it is clear and undisputed that the policy's limit is $300,000. Thus, the amount of damages State Farm must pay to T.B. must be reduced from $375,000 to $300,000.[3]

---

2. The trial court's order granting T.B.'s motion for summary judgment stated that the consent judgment decided that the Dobson's were liable to T.B. in the amount of $375,000 plus interests and costs. The order then granted summary judgment in favor of T.B. Thus, although State Farm alleges that the order is completely silent as to the amount of

the judgment, we believe that it is clear that the trial court intended that the judgment amount be that which was decided by the consent judgment, $375,000.

3. Additionally, we note that State Farm did not participate in any activity that would increase the risk over the $300,000 policy limit.

We further note that according to the State Farm policy, "in addition to the limits of liability ... we pay ... interest on the entire judgment which accrues after the entry of judgment and before we pay or tender, or deposit in court that part of the judgment which does not exceed the limit of liability that applies." R. 280. Therefore, State Farm is required to pay interest and costs as well.

### Conclusion

Because State Farm acted at its own peril through its inaction and was estopped from asserting policy defenses which were addressed in the consent judgment, we hold that the trial court properly determined that summary judgment in favor of T.B. was appropriate. However, the facts clearly indicate that the policy limit was $300,000. Therefore, the judgment amount must be reduced by $75,000.

Affirmed in part and reversed and remanded in part.

MATTINGLY, J., concurs.

NAJAM, J., concurs in result with opinion.

NAJAM, Judge, concurring in result

I concur in the result reached by the majority but write separately because the majority opinion addresses issues that are unnecessary to decide the case. The discussion on the merits of State Farm's childcare policy exclusion claim is surplusage.

As a preliminary matter, this case comes to us following the trial court's grant of T.B.'s motion in proceedings supplemental to enforce her judgment against the Dobsons, which named State Farm as garnishee defendant. A trial court is vested with broad discretion in conducting proceedings supplemental. *Hermitage Ins. Co. v. Salts*, 698 N.E.2d 856, 858 (Ind.Ct.App. 1998). Proceedings supplemental, as provided for in Indiana Trial Rule 69, are summary in nature because the claim has already been determined to be a justly owed debt reduced to judgment. *Id.* As this court recognized in *Gallant Ins. Co. v. Wilkerson:*

> The filing of a motion for proceedings supplemental "speaks only to *how* the claim is to be satisfied, whereas the complaint in the original action speaks to *whether* the claim should be satisfied." Proceedings supplemental are merely a continuation of the underlying claim initiated under the same cause number for purposes of enforcing a judgment.

720 N.E.2d 1223, 1229 (Ind.Ct.App.1999) (citations omitted).

In light of these principles, it is apparent that State Farm cannot raise the childcare exclusion in an attempt to shield its policy from proceedings supplemental. Such an attempt is an impermissible collateral attack on the underlying judgment against its insureds. *See Salts*, 698 N.E.2d at 859. "Clearly, proceedings supplemental 'are not appropriate vehicles for creating, enlarging or reducing liability[.]'" *Wilkerson*, 720 N.E.2d at 1229 (citation omitted). Moreover, it is well settled that the contractual provisions of an insurance policy may be waived or that the insurer may be estopped from asserting such provisions in an effort to disclaim liability. *Id.* at 1227. "The doctrine of collateral estoppel applies to insurance contracts and an insurer is ordinarily bound by the result of litigation to which its insured is a party, so long as the insurer had notice and the opportunity to control the proceedings." *Liberty Mut. Ins. Co. v. Metzler*, 586 N.E.2d 897, 900 (Ind.Ct.App.1992), *trans. denied.*

It is undisputed that State Farm had notice of and opportunity to control the proceedings in the underlying tort action against its insureds. State Farm was served with a courtesy copy of T.B.'s complaint against the Dobsons and even went so far as to take statements from both Murl and Vicki Dobson regarding the incident. It thus had "a full and fair opportunity" to raise its childcare policy exclusion

claim during the course of the underlying litigation and could have protected itself (against the fraud, collusion, and bad faith which it now alleges) either by filing a declaratory judgment action on the issue of coverage or defending the Dobsons under a reservation of rights. *See Wilkerson,* 720 N.E.2d at 1229.

Having done neither, and having declined to defend the Dobsons altogether, State Farm waived the right to raise the defense of a policy exclusion based on facts previously resolved in the consent judgment and is now estopped from asserting the same in proceedings supplemental. *See id.* An insurer cannot take its first bite from the proverbial apple to defeat a judgment in proceedings supplemental. *Cf. id.* (characterizing insurer's attempt to claim insured's breach of cooperation clause to avoid liability in proceeding supplemental as an attempt "to take a second bite at the proverbial apple at the expense of [the judgment creditor.]"). This court has stated time and time again that "[a]n insurer may not sit idly by and wait until an adverse judgment is entered before raising a dispositive defense." *See, e.g., Salts,* 698 N.E.2d at 859. That issue alone decides this case.

For these reasons, I concur in result.